[This opinion has been published in *Ohio Official Reports* at 86 Ohio St.3d 185.]

OFFICE OF DISCIPLINARY COUNSEL *v.* MAZER.

[Cite as *Disciplinary Counsel v. Mazer*, 1999-Ohio-156.]

*Attorneys at law—Misconduct—Six-month suspension—Continuing multiple employment if independent professional judgment on behalf of a client is likely to be adversely affected by representation of another client— Representing two or more clients in the making of an aggregate settlement of the claims of or against those clients—Previous violation of a comparable Disciplinary Rule.*

(No. 98-2659—Submitted May 4, 1999—Decided July 21, 1999.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 97-62.

_____

{¶ 1} In 1996, we found that respondent, Bernard D. Mazer of Dublin, Ohio, Attorney Registration No. 0037775, had violated several Disciplinary Rules and suspended him from the practice of law for six months, with the suspension stayed. *Disciplinary Counsel v. Mazer* (1996), 76 Ohio St.3d 481, 668 N.E.2d 478. We concluded that respondent had violated, among other rules, DR 5-105(A) (refusing to decline proffered employment if attorney's professional judgment on behalf of client is likely to be adversely affected). 76 Ohio St.3d at 483, 668 N.E.2d at 480.

{¶ 2} On June 16, 1997, relator, Office of Disciplinary Counsel, filed a complaint charging respondent with violating several Disciplinary Rules. After respondent answered, the matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 3} Based on the evidence, the panel found that in 1990, Karl Demmler and John Crites, owners of Concrete Designers, Inc. ("CDI"), sold their stock in the company to Ralph Hazelbaker for cash and secured promissory notes from

Hazelbaker and the company. When the notes became due in 1991, Hazelbaker and CDI filed lawsuits in Franklin County Common Pleas Court against Crites and Demmler, claiming the sellers had undisclosed liabilities at the time of sale. Crites and Demmler answered and filed counterclaims either to recover control of the company or be paid on the promissory notes. The cases were consolidated. Attorney Michael P. Vasco represented Crites in common pleas court; attorney Steve Brown represented Demmler. Just before these lawsuits were to be tried, CDI filed a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Ohio.

{¶ 4} In January 1993, Demmler and Crites hired respondent, who had formerly represented Demmler in tax matters, to represent both of them in a dispute with the Internal Revenue Service regarding the tax liability that arose because of the CDI sale. At the time Demmler and Crites retained respondent, respondent wrote each a letter requesting consent to his representation of both despite "potential conflicts of interest" that could arise, and the letter emphasized that respondent's representation was specifically limited to tax refund litigation. Both Demmler and Crites consented to these terms.

{¶ 5} In August 1993, respondent wrote to Vasco, the attorney representing Crites in the common pleas court action, to address some of respondent's concerns about Vasco's representation of Crites in the common pleas court litigation. In the letter, respondent specified:

"After the filing of the bankruptcy by Concrete Designers, Inc., it appears that Mr. Crites and Mr. Demmler have many similar interests in this matter, but *there are some very clear and distinct differences in their respective positions.* * * * [W]ith the bankruptcy filing, the eventual ownership of Concrete Designers, Inc., and its assets may follow different paths and *Mr. Crites and Mr. Demmler may not be on the same path.*" (Emphasis added.)

{¶ 6} In May 1994, after the bankruptcy court agreed to allow the common pleas court lawsuit to continue, Crites discharged Vasco and hired respondent to represent him in the state court litigation and the Chapter 11 matter.

{¶ 7} A month later, in June 1994, Demmler, Crites, and Hugh Richards retained respondent to form a limited liability company, Asset Acquisition Company, Ltd., to reacquire the assets of CDI in the Chapter 11 case. At that time, respondent advised each of these individuals by letter of potential conflicts of interest and requested their individual consent to his joint representation. Respondent specified in his letter that his representation of Demmler, Crites, and Richards was limited to their acquisition of CDI assets. The letter did not mention the objective of obtaining money due Demmler and Crites from the sale of CDI to Hazelbaker. Demmler, Crites, and Richards each consented to these terms.

{¶ 8} In September 1994, Demmler hired respondent to represent him in the common pleas court litigation. Although respondent then was representing both Demmler and Crites in the common pleas court action, he did not obtain written consent of either party to such multiple representation in that action, insofar as the parties requested money from CDI and Hazelbaker. In November 1994, Crites gave respondent a $75,000 promissory note for the payment of legal fees he had incurred and would incur with respondent.

{¶ 9} In early January 1995, the parties settled the state court litigation. The settlement agreement provided for two different plans, with the second option, which ultimately applied here, providing that CDI and Hazelbaker pay $900,000 to the court for distribution to Demmler and Crites. Demmler and Crites agreed that Crites would receive $400,000 and that Demmler would receive $500,000 of the $900,000. At the settlement hearing, the common pleas court judge stated that "[i]f there is a falling out between Mr. Demmler and Mr. Crites as to how the money is to be divided, it then will also be paid into escrow to the court, and the court will work with the parties in resolving that issue by resolution or litigation * * *." On

several occasions during the settlement process, the court advised the parties of the potential conflict. Crites subsequently disagreed with Demmler about the timing of the settlement payments.

{¶ 10} In February 1995, Crites fired respondent as his attorney in the common pleas litigation and again hired Vasco. After being fired, respondent sued Crites on the $75,000 note, and respondent continued to represent Demmler in the state court action. Demmler and Crites ultimately resolved their dispute concerning the timing and distribution of their respective portions of the state court settlement proceeds.

{¶ 11} Based on these facts, the panel concluded that respondent's conduct violated DR 5-105(B) (continuing multiple employment if independent professional judgment in behalf of a client is likely to be adversely affected by representation of another client) and 5-106(A) (representing two or more clients in the making of an aggregate settlement of the claims of or against those clients). The panel recommended that respondent be publicly reprimanded. The board adopted the findings, conclusions, and recommendation of the panel.

———————————

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Kenneth R. Donchatz*, Assistant Disciplinary Counsel, for relator.

*James Caruso,* for respondent.

———————————

***Per Curiam.***

{¶ 12} We adopt the findings and conclusions of the board. For the following reasons, however, we believe that a more severe sanction is warranted. DR 5-105(B) provides that "[a] lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is *likely to be adversely affected* by his representation of another client, except to the extent permitted under DR 5-105(C)." (Emphasis added.) DR 5-105(C)

permits an attorney to represent multiple clients "if *it is obvious that he can adequately represent the interest of each* and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each." (Emphasis added.)

{¶ 13} Here, respondent himself acknowledged in 1993 to Crites's then-attorney in the state court litigation that the interests of Demmler and Crites contained "clear and distinct differences." The common pleas court subsequently determined these concerns to be substantial enough to merit including a provision in the settlement agreement to settle any dispute between Demmler and Crites regarding the distribution of the settlement proceeds. On the day that Crites fired respondent, Crites sent respondent a facsimile transmission that referred to disagreements between himself and Demmler.

{¶ 14} Based on this evidence, it was "likely" that respondent's continued representation of both Demmler and Crites in the state court litigation would adversely affect his clients and it was far from "obvious" that he could adequately represent both Demmler's and Crites's interests. DR 5-105(B) and (C). In addition, neither of the written consents to representation of multiple clients executed by Demmler and Crites applied to the state court litigation's $900,000 settlement option. Therefore, respondent's conduct manifestly violated DR 5-105(B).

{¶ 15} We further concur in the board's conclusion that respondent violated DR 5-106(A).

{¶ 16} In sum, "[a] lawyer should never represent in litigation multiple clients with differing interests; and *there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests*." (Emphasis added.) EC 5-15. Respondent's continued representation of Demmler and Crites, whom he had previously noted to have "clear and distinct" interests, is not one of those few justifiable situations. Regardless of whether respondent's conduct created an actual conflict of interest, it created a *potential*

conflict of interest, which is sufficient to violate DR 5-105(B).  See, *e.g., Kentucky Bar Assn. v. Roberts* (Ky.1979), 579 S.W.2d 107, 109.

{¶ 17} In considering respondent's violations of DR 5-105(B) and 5-106(A) and his previous violation of a comparable Disciplinary Rule, we find that a six-month suspension is appropriate.  See *Cuyahoga Cty. Bar Assn. v. Schmelzer* (1999), 84 Ohio St.3d 382, 704 N.E.2d 243; *Cleveland Bar Assn. v. Podor* (1995), 72 Ohio St.3d 40, 647 N.E.2d 470; and *Columbus Bar Assn. v. Ewing* (1992), 63 Ohio St.3d 377, 588 N.E.2d 783, where we imposed a similar sanction for comparable violations of DR 5-105; see, also, *Toledo Bar Assn. v. Westmeyer* (1991), 58 Ohio St.3d 38, 40, 567 N.E.2d 1016, 1018 ("[R]espondent's prior misconduct, based on similar charges, is relevant to the choice of sanction.").  Respondent is hereby suspended from the practice of law for six months.  Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., F.E. SWEENEY, COOK and HOFFMAN, JJ., concur.

PFEIFER, J., dissents and would publicly reprimand respondent.

DOUGLAS and PETREE, JJ., dissent and would dismiss the cause against respondent.

CHARLES R. PETREE, J., of the Tenth Appellate District, sitting for RESNICK, J.

WILLIAM B. HOFFMAN, J., of the Fifth Appellate District, sitting for LUNDBERG STRATTON, J.

_____